**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(ALEXANDRIA DIVISION)**

| | | |
|---|---|---|
| SHARP DETAILS, LLC d/b/a<br>PRIME APPEARANCE<br>3 Sugar Creek Center Blvd., Suite 450<br>Sugar Land, TX 77478 | : | |
| Plaintiff, | : | Civil Action No. 1:25-cv-00276 |
| v. | : | |
| GABRIEL MENESES<br>95 Oceanview Avenue<br>Valley Stream, NY 11581 | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant, Gabriel Meneses ("Meneses") by counsel, hereby move for summary judgment as to Plaintiff, Sharp Details LLC d/b/a Prime Appearance ("Plaintiff"), two claims for: (a) breach of contract; and (b) unjust enrichment. In support of this motion, Defendant hereby relies on and incorporates the arguments set forth in his memorandum of law.

Dated: October 20, 2025

Respectfully submitted,

McNAMEE HOSEA, P.A.

/s/ Justin P. Fasano

Justin P. Fasano (VSB # 75983)
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jfasano@mhlawyers.com
Attorneys for Defendant

and

FORCHELLI DEEGAN TERRANA LLP

By:___/s/__Lisa Casa______________________
Gregory S. Lisi, Esq. (admitted pro hac vice)
Lisa M. Casa, Esq. (admitted pro hac vice)
The OMNI
333 Earle Ovington Blvd., Suite 1010
Uniondale, NY 11553
Phone: (516) 248-1700
Fax: (516) 248-1729
glisi@forchellilaw.com
lcasa@forchellilaw.com

Attorneys for Defendant

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..... i

**TABLE OF AUTHORITIES** ..... ii

**PRELIMINARY STATEMENT** ..... 1

**STATEMENT OF MATERIAL AND UNDISPUTED FACTS** ..... 2

**A. STIPULATED FACTS** ..... 2

**B. MATERIAL AND UNDISPUTED FACTS** ..... 4

**LEGAL ANALYSIS** ..... 7

**I. STANDARD OF REVIEW** ..... 7

**II. PLAINTIFF CANNOT PROCEED ON A BREACH OF CONTRACT BECAUSE THE RESTRICTIVE COVENANTS THAT PLAINTIFF SEEKS TO ENFORCE ARE UNENFORCEABLE AS A MATTER OF LAW.** ..... 8

**A. The Restrictive Covenants are Unreasonable as a Matter of Law.** ..... 8

**B. THE RESTRICTIVE COVENANTS ARE UNENFORCEABLE UNDER VIRGINIA LAW, VA. St. § 40.1-28.7:8.** ..... 13

**C. EVEN ASSUMING, *ARGUENDO*, THAT THE RESTRICTIVE COVENANTS WERE ENFORCEABLE, THEY DO NOT PROHIBIT MENESES FROM WORKING FOR LIBERTY JET.** ..... 16

**D. LIBERTY JET'S DECISION TO CEASE USING PLAINTIFF'S SERVICES WAS NOT CAUSALLY RELATED TO MENESES'S EMPLOYMENT AT LIBERTY JET.** ..... 17

**E. MENESES HAS NOT SOLICITED ANY OF PLAINTIFF'S EMPLOYEES TO TERMINATE THEIR EMPLOYMENT WITH PLAINTIFF.** ..... 18

**III. PLAINTIFF CANNOT PREVAIL ON ITS CLAIM FOR UNJUST ENRICHMENT.** ..... 18

*A. The Unjust Enrichment Claim Fails Because The Parties Have a Contract Concerning this Subject Matter.* ..... 19

*B. Plaintiff Cannot Prevail On the Unjust Enrichment Claim Because Meneses Has Not Derived a Benefit from Plaintiff's Purported Confidential Information.* ..... 19

**CONCLUSION** ..... 20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 7

*Brainware, Inc. v. Mahan*,
808 F. Supp. 2d 820 (E.D. Va. 2011) .......... 9

*Butts v. Weltman, Weinberg & Reis Co., LPA*,
2013 WL 6039040 (E.D. Va. Nov. 14, 2013) .......... 19

*Calderon v. GEICO Gen. Ins. Co.*,
809 F.3d 111 (4th Cir. 2015) .......... 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 7

*Chavez-Deremer v. Plaza Azteca Yorktown, Inc.,*
2025 WL 1461822 (E.D. Va. May 21, 2025) .......... 15

*Cortez-Melton v. Cap. One Fin. Corp.*,
2021 WL 771754 (E.D. Va. Feb. 26, 2021) .......... 17, 19

*Hoffman v. Bear Chase Brewing Co., LLC,*
2023 WL 2352926 (E.D. Va. Mar. 3, 2023) .......... 14

*Home Paramount Pest Control Companies, Inc. v. Shaffer*,
282 Va. 412 (2011) .......... 8, 9

*Lasership Inc. v. Watson*,
79 Va. Cir. 205 (2009) .......... 11

*LCF Grp., Inc. v. Piedmont Power Sports, Inc.*,
688 F. Supp. 3d 323 (W.D. Va. 2023) .......... 18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 7

*Mod. Env'ts, Inc. v. Stinnett*,
263 Va. 491 (2002) .......... 9

*Motion Control Sys., Inc. v. East*,
262 Va. 33 (2001) ........ 8

*Nortec Commc'ns, Inc. v. Lee-Llacer*,
548 F. Supp. 2d 226 (E.D. Va. 2008) ........ 9, 11

*Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.*,
270 Va. 246 (2005) ........ 8

*O'Sullivan Films, Inc. v. Neaves*,
352 F. Supp. 3d 617 (W.D. Va. 2018) ........ 8

*Power Distribution, Inc. v. Emergency Power Eng'g, Inc.*,
569 F. Supp. 54 (E.D. Va. 1983) ........ 12

*Power Home Solar, LLC v. Sigora Solar, LLC*,
2021 WL 3856459 (W.D. Va. Aug. 30, 2021) ........ 9, 11

*Roto-Die Co. v. Lesser*,
899 F. Supp. 1515 (W.D. Va. 1995) ........ 11

**Statutes**

29 U.S.C. §207 ........ 13

Fed. R. Civ. P. 1 ........ 7

Fed. R. Civ. P. 56(a) ........ 7

VA ST § 40.1-28.7:8 ........ 13

**Regulations**

29 C.F.R. § 541.100 ........ 14, 15

**PRELIMINARY STATEMENT**

Plaintiff, Sharp Details, LLC d/b/a Prime Appearance ("Plaintiff") brings this action in an effort to attempt to prohibit defendant, Gabriel Meneses ("Meneses") from earning a living as a cleaner of aircraft. This position is essentially as it appears to be, a glorified janitor. Meneses cleans the toilets, wipes the seats, polishes the metal (brightwork) and cleans the carpets.

Meneses was employed by Plaintiff, and its predecessor, Jet Fast, from in and around 2005 until his termination in August 2024. Thereafter, Meneses, needing to continue to pay his mortgage and support his family, was offered a position as a cleaner for Liberty Jet, where he is responsible for cleaning aircrafts, offices and lavatories. Plaintiff now seeks *monetary damages* against Meneses by attempting to enforce the exceedingly broad non-solicit and non-compete provisions that are incorporated in its Confidential and Non-Competition Agreement ("Agreement"), which Meneses was required to sign after Plaintiff purchased Jet Fast. Plaintiff's lawsuit seeks to prohibit Meneses from working in his chosen profession – detailing and cleaning aircraft – and earning a living. However, the restrictive covenants that Plaintiff seeks to enforce are unenforceable as a matter of law because the provisions' functional limitations are exceedingly broad and are not limited to only the type of work (cleaning and detailing aircraft) that Meneses conducted for Plaintiff. Further, these provisions are unenforceable under Virginia State Law, which prohibits enforcement of restrictive covenants, such as the Agreement, when an employee, such as Meneses, should be classified as non-exempt under the FLSA. What more, Meneses' employment with Liberty Jet, who had no service agreement or other contract requiring it to use Plaintiff's services for any period of time, does not preclude Liberty Jet from using Plaintiff's services. Indeed, it was Plaintiff's poor performance on a Liberty Jet plane – not Meneses' employment – that resulted in

any lost business. Accordingly, Plaintiff's claim for breach of contract fails as a matter of law and should be dismissed.

With respect to Plaintiff's second claim for unjust enrichment, this claim fails because the purported confidential information for which Plaintiff is seeking equitable relief, is subject to paragraph 1 of the Agreement, and, therefore, Plaintiff is precluding from seeking the equitable relief of unjust enrichment. Additionally, Meneses has derived no separate benefit from this information (to the extent it was available to him), and, therefore, the unjust enrichment claim fails as a matter of law. Accordingly, judgment on Plaintiff's claims for: (a) breach of contract and (b) unjust enrichment should be granted to Defendant.

## STATEMENT OF MATERIAL AND UNDISPUTED FACTS

### A. STIPULATED FACTS[1]

1. Meneses was hired by Jet Fast Cleaning Services, Inc. ("Jet Fast") on October 7, 2007.

2. On or around September 8, 2023, Plaintiff acquired Jet Fast.

3. Following Plaintiff's acquisition of Jet Fast, Meneses was hired by Plaintiff.

4. Plaintiff is an aircraft maintenance company, with a wide range of detailing services offered for its client's aircrafts, including interior and exterior detailing of aircraft and office spaces.

5. Meneses was employed by Plaintiff as Manager.

6. On September 13, 2023, Meneses entered into a Confidentiality and Non-Competition Agreement.

7. On March 14, 2024, Meneses acknowledged Plaintiff's 2024 Employee Handbook.

[1] The foregoing facts have been stipulated to by the parties. *See* Doc. No. 34.

8. Plaintiff had operations at Republic Airport ("FRG"), located in East Farmingdale, New York and Long Island MacArthur Airport ("ISP"), located in Ronkonkoma, New York.

9. Meneses performed work for Plaintiff at FRG and ISP.

10. Plaintiff provides services at FRG and ISP to, among other companies, Liberty Jet Pitch Link, LLC ("Pitch Link"), PVFNY LLC, Jet Aviation Management and Superior Jet.

11. During his employment with Plaintiff, Meneses worked with Liberty Jet, Pitch Link, and PVFNY LLC among others.

12. During his employment with Plaintiff, Meneses performed work on aircraft at FRG and ISP that was not billed through Plaintiff.

13. Plaintiff conducted an investigation into Meneses' conduct in or around August 2024.

14. On August 15, 2024, Meneses entered into a Promissory Note with Plaintiff for $2,250, the amount of money Meneses reported he was paid in gross by outside companies.

15. Meneses paid off the Promissory Note by having $2,230 deducted from his wages and $20.00 paid out of his pocket.

16. Meneses was terminated by Plaintiff on August 15, 2024.

17. Since Meneses' termination, he has worked at both FRG and ISP performing airplane maintenance services.

18. On October 2, 2024, Plaintiff sent a Cease-and-Desist Letter to Meneses.

19. Meneses commenced work with Liberty Jet on or about September 11, 2024.

20. At Liberty Jet, Meneses is responsible for detailing interior and exterior aircraft, cleaning the hangar, keeping the office space clean, mopping and waxing the floors, and cleaning the lavatories.

21. Meneses' work at Liberty Jet is conducted principally at its hangar at ISP.

22. A Pitch Link aircraft received detailing services performed by Meneses in 2025.

23. Meneses is one of two members of Jet Linens LLC ("Jet Linens").

24. Jet Linens is a New Jersey limited liability company that was registered with the state of New Jersey on July 23, 2021.

25. Diego Herrera resigned from Prime Appearance on or about January 27, 2025.

26. Mr. Herrara reported to Meneses when Meneses was employed with Prime Appearance.

**B. MATERIAL AND UNDISPUTED FACTS[2]**

1. Meneses started out in airplane maintenance in 1994 working for a Company known as Prestige. (Men. Tr., Ex. A, at 13:4-16).

2. In and around 1999, Prestige was acquired by Jet Fast, and Meneses continued as an airplane cleaner for Jet Fast. (Men. Tr., Ex. A, at 14:9-12).

3. Following a brief gap of employment, Meneses remained employed by Jet Fast from in and around 2007, until Jet Fast was acquired by Plaintiff in September 2023. (Men. Tr., Ex. A, at 15:19-20).

4. Plaintiff has offices located at FRG, with the highest title being manager who are overseen by the regional leadership based in New Jersey. *See* Gregory Tr., Ex. B, 10:2-7.

5. Meneses spent approximately 50% to 70% of his time cleaning the planes. (Men. Tr., Ex. A, 28:18-19, Gregory Tr., Ex. B, 18:13-18).

[2] At the time of filing this motion, the deposition of Dan Leon was noticed for Wednesday, October 22, 2025, and Defendant reserves its rights to amend this statement with any of the testimony or records that may be produced at this deposition.

6. Meneses was also responsible for scheduling employees, ordering products, and ordering uniforms. *See* Men. Tr., Ex. A, 17:1-6.

7. When employed at Jet Fast, Meneses reported to Rosemary Rispoli. *See* Men. Tr., Ex. A, 18:4-7.

8. It was not Meneses' responsibility to solicit new work from either Plaintiff's existing or potential customers. *See* Men. Tr., Ex. A, 29:8-12.

9. While employed by Plaintiff, Meneses spent approximately 90% of his time at the airport located in Farmingdale, New York *see* Men. Tr., Ex. A, 22:5-6.

10. Plaintiff provided interior and exterior cleaning services, as well as commissary services and office cleaning services. *See* Men. Tr., Ex. A, 22:11-25, Gregory Tr., Ex. B, 13:8-17.

11. Soliciting new and existing contracts was the responsibility of Vincent Scimeca and the individuals employed in Plaintiff's corporate office. (Men. Tr., Ex. A, 29:14-18).

12. While employed at Jet Fast, and for the majority of time working for Plaintiff, Meneses was neither responsible for nor familiar with pricing, and pricing was often communicated to the customers directly by Rosemarie Rispoli in Plaintiff's main office. (Men. Tr., Ex. A, 31:11-14, 44:10-15).

13. It was only in his last three months of employment, while Meneses had access to Plaintiff's prices on Plaintiff's invoicing system, PrimeOps. *See* Men. Tr., Ex. A, 50:1-6; 49:25, 50:1-25, 51:1-2.

14. Meneses did not focus on or take notice of these prices. *See* Men. Tr., Ex. A, 50:1-6; 49:25, 50:1-25, 51:1-2.

15. Meneses could not distinguish whether there was different pricing for newer clients or legacy clients. *See* Men. Tr., Ex. A, 50:18-25, 51:1-2.

16. Prior to the rollout of PrimeOps, Meneses had no responsibility with respect to billing or other information. *See* Men. Tr., Ex A 4-7*;* 48:4-21.

17. Pricing is controlled by Plaintiff's senior leadership team. *See* Gregory Tr., Ex. B, 30:16-18.

18. The PrimeOps system would have Plaintiff's customer's names, phone number, plane number and service being provided. *See* Men. Tr., Ex. A, 47:12-15.

19. Liberty Jet is an aircraft management company, which "offers jet management, jet card, jet charter and aircraft purchase, sales and advisory services."[3]

20. Liberty Jet operates out of the airport located in Islip, New York ("ISP"). *See* Men. Tr., Ex. A, at 36:19-22.

21. Prime Appearance had two levels of services for its customers, either planes under contract or a la carte. *See* Men. Tr., Ex. A, 43:6-12, Gregory Tr., Ex. B, 26:10-11.

22. Customers who were on a contract were given services on a regularly basis. *See* Men. Tr., Ex. A, 43:6-12.

23. Customers who used a la carte services would call when they needed service. *See* Men. Tr., Ex. A, 43:13-16.

24. Liberty Jet was dissatisfied with the services Plaintiff provided to Liberty Jet after Meneses' termination. *See* Meneses Tr., Ex. A, 100:6-22.

25. Steve Mott, a mechanic with Liberty Jet, reached out to Meneses to ask him to interview for a position after Liberty Jet after they heard Meneses was terminated. *See* Meneses Tr., Ex. A, 100:6-22.

---

[3] *See* "About" at https://www.libertyjet.com/about.aspx [last visited 17 October 2025].

26. Steve Mott spoke with Kelvin Perez about his disappointment with the incomplete job that had to be completed by Liberty Jet's employees. *See* Meneses Tr., Ex. A, 101:22-25.

27. Meneses was employed by Liberty Jet as of September 11, 2024 as a cleaner. *See* Meneses Tr., Ex. A, 104:11.

28. Peter Carluccio, who is employed with Pitch Link, reached out to Meneses on or about June 17, 2025, to ask if Meneses could provide cleaning services for helicopter N212Y. *See* Meneses Tr., Ex. A, 130:22-25, 130:1, 134-135; Text Message, Ex. B, (Men. 49).

29. Diego Herrera is not employed by Liberty Jet. *See* Men., Tr. Ex. A, 163:16-20.

30. In February 2025, Plaintiff was able to reobtain the business of PVFNY LLC. *See* Gregory Tr., Ex. B, 53:6-11, 76:17-18.

## **LEGAL ANALYSIS**

### **I. STANDARD OF REVIEW**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)). The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" for summary judgment purposes when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 *quoting* Fed. R. Civ. P. 1. Here,

there are no material disputes of fact that the exceedingly broad restrictive covenants Plaintiff seeks to enforce are unenforceable as a matter of law. Therefore, summary judgment should be appropriately awarded in favor of Meneses and Plaintiff's claims for breach of contract and unjust enrichment dismissed in their entirety.

## II. PLAINTIFF CANNOT PROCEED ON A BREACH OF CONTRACT BECAUSE THE RESTRICTIVE COVENANTS THAT PLAINTIFF SEEKS TO ENFORCE ARE UNENFORCEABLE AS A MATTER OF LAW.

### A. The Restrictive Covenants are Unreasonable as a Matter of Law.

In this action, Plaintiff, after terminating Defendant's employment, now attempts to seek monetary damages by enforcing a non-compete restriction, which is unenforceable as a matter of law. "In Virginia, 'restrictive covenants are disfavored restraints on trade," and as such, the validity of a noncompete is a threshold question.' Whether a defendant breached a noncompete becomes moot if the noncompete is invalid and unenforceable." *O'Sullivan Films, Inc. v. Neaves*, 352 F. Supp. 3d 617, 623 (W.D. Va. 2018), citing *Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.*, 270 Va. 246, 249 (2005); *Motion Control Sys., Inc. v. East*, 262 Va. 33, 37 (2001)("Covenants not to compete are restraints on trade and accordingly are not favored."). In this respect, "[a] non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." *Omniplex World Servs. Corp.*, 270 Va. at 249. "The enforceability of a provision that restricts competition is a question of law that [the courts] review de novo." *Home Paramount Pest Control Companies, Inc. v. Shaffer*, 282 Va. 412, 415 (2011). Plaintiff, as the employer, "bears the burden of proof and any ambiguities in the contract will be construed in favor of the employee." *Omniplex World Servs. Corp.*, 270 Va. at 249.

When determining whether a restrictive covenant is enforceable, court consider "the legitimate, protectable interests of the employer, the nature of the former and subsequent employment of the employee, whether the actions of the employee actually violated the terms of the non-compete agreements, and the nature of the restraint in light of all the circumstances of the case." *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 826 (E.D. Va. 2011), citing *Mod. Env'ts, Inc. v. Stinnett*, 263 Va. 491, 494 (2002). Additionally, "[w]hen evaluating whether the employer has met that burden, [the courts] consider the 'function, geographic scope, and duration' elements of the restriction." *Home Paramount Pest Control Companies, Inc*., 282 Va. at 415. Other factors that Courts consider when judging the reasonableness of a restrictive covenant are: "the nature and geographic area of the employer's business, the market generally, and the relevant employee's position, seniority, and access to important information." *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, at *3 (W.D. Va. Aug. 30, 2021). "[S]olicitation clauses are reviewed under the same standards as those developed for non-competition clauses because solicitation is a form of competition." *Nortec Commc'ns, Inc. v. Lee-Llacer*, 548 F. Supp. 2d 226, 230 (E.D. Va. 2008).

**i. <u>The Restrictive Covenants Are Functionally Excessive</u>.**

With respect to the functional analysis, courts consider "whether the prohibited activity is of the same type as that actually engaged in by the former employer." *Home Paramount Pest Control Companies, Inc*, 282 Va. at 416. In this respect, "[w]hen a former employer seeks to prohibit its former employees from working for its competitors in any capacity, it must prove a legitimate business interest for doing so." *Id.* at 417-18. Here, the non-compete and non-solicit provisions excessively restricts Meneses from providing any services to Plaintiff's customers,

regardless of the nature or type of service. Particularly, the Paragraph 3 of the Agreement provides that Meneses may not:

> (a) Contact any Client of the Company for the purpose of requesting, inducing, or attempting to induce such Client to cancel, breach or fail to renew any agreement for services with the Company;
>
> (b) Contact any Client of the Company for the purpose of requesting, inducing or attempting to induce such Client to terminate any business relationship with the Company or to seek additional or new services similar to those provided by the Company from any source other than the Company;
>
> (c) Cause, encourage in or any way assist any third person or entity to offer or provide any service of the type provided by the Company to any Client of the Company;
>
> (d) Compete with the Company on behalf of himself or herself or any entity founded by him or her in any city or county in the United States of America in which Employee made sales or obtaining clients on behalf of the Company, solicited sales or business on behalf of the Company, or provided services to clients of the Company, within the one-year period prior to Employee's termination of employment;
>
> (e) Compete with the Company as an employee of a person or entity engaged in any business similar to the type of business conducted by the Company by soliciting or assisting in the solicitation of such business in any city or county in the United States of America in which Employee made sales or obtained clients on behalf of the Company, solicited sales or business on behalf of the Company, or provided services to clients of the Company, within the one year period prior to the termination of Employee's employment;
>
> (f) Induce or attempt to induce any of the Company's Employees to terminate their employment with the Company or to provide the same type of service performed by the Company for any other person or entity.

These exceedingly broad provisions prohibit Meneses from contacting any of the Company's "Clients" and further bars him for "competing" against Plaintiff, without defining what

activities are competitive nor limits Meneses from only engaging in the same type of activities – cleaning services – that he provided for Plaintiff.

Particularly, while Meneses served primarily[4] as a cleaner, these provisions prohibit him from working in any capacity of a competing business, even if it was outside of the scope of the type of work that he conducted for Plaintiff. Such broad provisions have been found to be unenforceable as a matter of law. *See, e.g., Power Home Solar, LLC*, 2021 WL 3856459, at *5 ("the noncompete covenant's function is essentially limitless. Under the provision, Ventura and Stephens cannot engage in 'any employment or business' in the residential or commercial solar-energy market in the United States for one year. Apart from the fact that this acts as a blanket geographical prohibition, the covenant does not seek to limit the prohibition to the kind of work that Stephens and Ventura actually performed for PHS (sales)."); *Nortec Commc'ns, Inc. v. Lee-Llacer*, 548 F. Supp. 2d 226, 231 (E.D. Va. 2008) ("This case is strikingly similar to the scenario presented in *Lanmark* where the Court declined to uphold the non-compete agreement between the parties on the grounds that it was not narrowly drawn and functionally overbroad. The Court found that the clause was excessive to the extent that it prohibited "a former employee from *any* form of employment with a competitor, including work unrelated to the employee's work [for their former employer]."); *Lasership Inc. v. Watson*, 79 Va. Cir. 205 (2009)("However, a covenant not to compete is functionally overbroad and unenforceable if it prevents an employee from working for companies not in competition with the former employer or it prevents an employee from pursuing noncompeting employment positions with *any* employer."); *Roto-Die Co. v. Lesser*, 899 F. Supp. 1515, 1520 (W.D. Va. 1995) (rejecting a non-compete that "contains no functional limitation as to Lesser's work with another employer. Thus, construed strictly against the employer, it could be

[4] *See* Stmt. Material Fact at ¶5.

read to prohibit any type of employment, even employment outside the scope of the work Lesser did for Micrometrics."); *Power Distribution, Inc. v. Emergency Power Eng'g, Inc.,* 569 F. Supp. 54, 58 (E.D. Va. 1983)(finding "the covenant is unenforceable for not being clearly limited in the scope of employment activities it proscribes to a scope that would be reasonable under the instant circumstances.").[5]

These cases demonstrate that unlimited restrictions that prohibit the solicitation or competition by a former employer for any activities, not just the activities in which the employee was engaged, render the restrictive covenants invalid and unenforceable as a matter of law. Here, the broad restrictions that prohibit Meneses from engaging in any actions with a Client, when his role was to provide cleaning services and schedule these cleanings,[6] goes well outside the bounds of reasonableness. Accordingly, the restrictions are unenforceable as a matter of law.

**ii. <u>The Definition of Client are Excessively Broad</u>.**

Additionally, the definition of "Client" is exceedingly broad, and encompasses any customer with whom Meneses even had passing contact in the one-year prior to his termination. Particularly, Client is defined by the Agreement as:

> a. A client of the Company whose business was solicited, received, or renewed by Employee;
> b. Actively solicited by the Company in an effort in which employee was involve or of which Employee had knowledge; or
> c. A Client or prospective client being actively solicited by the Company of whom Employee had knowledge or access to information.[7]

[5] The provision at issue in *Power Distribution* stated that "Lee could not 'accept any employment with any person or entity, or engage in any activity either directly or on behalf of any person or entity in competition with' plaintiff." *Power Distribution, Inc.*, 569 F. Supp. at 57.
[6] *See* Stmt. Material Fact at ¶5.
[7] *See* Agreement, Doc. No. 1-2.

Notably, there are no carve out or exception made for customers who may have only received an a la carte,[8] or one-off service nor is there a limitation to only those customers who had service agreements or monthly contracts. This exceedingly broad provision prohibits Meneses from earning a living for working as a cleaner or aircraft, even if the Client was not obligated nor required to continue using Plaintiff to complete its business. Therefore, the restrictive covenants cannot be enforced by this Court.

**B. THE RESTRICTIVE COVENANTS ARE UNENFORCEABLE UNDER <u>VIRGINIA LAW, VA. St. § 40.1-28.7:8</u>.**

The restrictive covenants are also unenforceable under Virginia Law.; VA ST § 40.1-28.7:8, provides that "[n]o employer shall enter into, enforce, or threaten to enforce a covenant not to compete with any low-wage employee." A "covenant not to compete" is defined in the statute as:

> a covenant or agreement, including a provision of a contract of employment, between an employer and employee that restrains, prohibits, or otherwise restricts an individual's ability, following the termination of the individual's employment, to compete with his former employer. A 'covenant not to compete' shall not restrict an employee from providing a service to a customer or client of the employer if the employee does not initiate contact with or solicit the customer or client.

The restrictive covenants that Plaintiff seeks to enforce, which prohibits Meneses from providing competing services is the type of improper restrictions that are prohibited under Virginia Law.

*i. Plaintiff Should Have Been an Hourly Employee Under the FLSA, Virginia Law and New York Labor Law.*

A "low wage employee" is defined in the statute as an individual "who, regardless of his average weekly earnings, is entitled to overtime compensation under the provisions of 29 U.S.C.

[8] *See* Stmt. Material Fact at ¶23.

§ 207 for any hours worked in excess of 40 hours in any one workweek." Va. St. § 40.1-28.7:8(A)(ii).

While Meneses was paid as an exempt salaried and had the title of "manager," his duties and responsibilities, which Plaintiff's own representative stated was 50% focused on manual labor of cleaning his aircraft,[9] and which Meneses contends was closer to 70%[10] of his time on manual aircraft maintenance services, is the type of employee who is not exempt from the minimum wage and overtime provisions of the FLSA. Particularly, only those employees who are:

> (1) Compensated on a salary basis at not less than the level set forth in § 541.600;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100, may qualify as an executive employee. *See also Hoffman v. Bear Chase Brewing Co., LLC,* 2023 WL 2352926, at *3 (E.D. Va. Mar. 3, 2023); *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 121 (4th Cir. 2015)(discussing how this same exemption is applied in New York because "[t]he applicable New York regulations incorporate the federal exemption by reference."). Here, Meneses's role at with Plaintiff does not satisfy this test because his primary duties were the cleaning and maintenance of aircraft, not the management of the enterprise. When determining whether an employee is "primarily" engaged in managerial activities, courts consider whether the employee's managerial duties are the:

[9] *See* Gregory Tr., Ex. B, 18:13-18.
[10] *See* Meneses Tr., Ex. A, 28:18-19.

> principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700.

Here, while Meneses did spend a portion (between 30% and 50% of his time), taking orders, scheduling services for Plaintiff's customers and assigning employees to the appropriate aircraft, he primarily was engaged, between 50% and 70% of his time, in the manual labor involved in cleaning and maintaining aircraft, such as wiping down seats, taking out garbage, and polishing metals.[11] *See Chavez-Deremer v. Plaza Azteca Yorktown, Inc.,* 2025 WL 1461822, at *8 (E.D. Va. May 21, 2025)("The amount of time an employee spends doing exempt work is a 'useful guide.'"). Such emphasis on the physical provision of services to Plaintiff's customers, and not on the management of the enterprise, renders Plaintiff a non-exempt employee. Accordingly, as Meneses' primary duties were manual labor – not managerial – he is not exempt under §207, and, therefore, the restrictive covenant agreements that Plaintiff seeks to enforce are unenforceable as a matter of Virginia law.

Plaintiff's claim for breach of contract fails as a matter of law. The restrictive covenants are overly broad and unenforceable as a matter of law due to their excessive functional restrictions on the type of work and type of clients who Meneses may not contact, and the restrictions are unenforceable under Virginia State Law. Additionally, even if enforceable, there is no causal

[11] *See* Stmt. Material Fact at ¶5.

relationship by Meneses's purported breach and the supposed damages incurred by Plaintiff. Therefore, Plaintiff's claim for breach of contract should be dismissed.

### C. EVEN ASSUMING, *ARGUENDO*, THAT THE RESTRICTIVE COVENANTS WERE ENFORCEABLE, THEY DO NOT PROHIBIT MENESES FROM WORKING FOR LIBERTY JET.

Even assuming, *arguendo*, that the restrictive covenants were found to be enforceable (which Meneses does not concede), the restrictions that concern the solicitation and work on behalf of a competitor do not prohibit Meneses from working for Liberty Jet, which was an a la carte customer of Plaintiff. Notably, the restrictions set forth in paragraph 3, prohibit Meneses from contacting any Client for the purposes of inducing the Client to "cancel, breach or fail to renew any agreement for services of the Company."[12] These restrictions, even if enforceable, are aimed at prohibiting Meneses from soliciting Plaintiff's Clients, or providing services to Clients on behalf of a competitive business. However, no evidence has been adduced to demonstrate that Meneses has engaged in any such actions. Indeed, with respect to Liberty Jet, Meneses is employed as a cleaner who is responsible for cleaning planes, office facilities, and lavatories.[13] There is nothing in Meneses' employment by Liberty Jet that would preclude Liberty Jet from continuing to utilize Plaintiff's services on an a la carte basis, as it had done in the past. Further, the "harms" that Plaintiff allege would occur if Meneses worked with a competitor, particularly the use of "confidential" information to "unfairly price products or services,"[14] do not exist where Liberty Jet, a customer of Plaintiff, was already knowledgeable about the prices charged by Plaintiff, underscoring how the concerns raised by Plaintiff simply are not an issue when the entity for which

[12] *See* Agreement [Doc. No. 1-2] at ¶3.
[13] *See* Stipulated Fact at ¶11.
[14] *See* Complaint [Doc. No. 1] at ¶13.

Meneses is providing cleaning services, already had knowledge of the costs associated with Plaintiff's services. Indeed, when questioned Plaintiff's representative at his deposition defined Plaintiff's competitors as "[o]ther aircraft detailing and janitorial companies."[15] Liberty Jet, as an airplane management company[16] would not fall within this category of competitors by Plaintiff's own definition. Accordingly, even if enforceable, Meneses who simply accepted a position as a cleaner with Liberty Jet has not breached his obligations to Plaintiff. As to Pitch Link, it was Peter Carluccio who contacted Plaintiff to request services for one helicopter, and, therefore, there was no solicitation conducted on Meneses's behalf. *See* Stmt. Material Fact at ¶27.

### D. LIBERTY JET'S DECISION TO CEASE USING PLAINTIFF'S SERVICES WAS NOT CAUSALLY RELATED TO MENESES'S EMPLOYMENT AT LIBERTY JET.

Liberty Jet ceased using Plaintiff's services due to Liberty Jet's dissatisfaction with Plaintiff's services.[17] Accordingly, it was Plaintiff's actions, not Meneses that resulted in any lost business or revenue. Without a causal connection between Meneses's employment with Liberty Jet and any change in Liberty Jet's business with Plaintiff, Plaintiff cannot seek damages for breach of contract. *See Cortez-Melton v. Cap. One Fin. Corp.*, 2021 WL 771754, at *7 (E.D. Va. Feb. 26, 2021)("To state a claim for breach of contract under Virginia law, a plaintiff must plausibly allege in federal court: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of the obligation; and, (3) an injury or harm caused by the defendant's breach."). As to Pitch Link, another customer about which Plaintiff complains, when Plaintiff's representative called Pitch Link about using Prime Appearance's services, Pitch Link's owner advised that its airplanes were in Florida.[18] As to the other customer, PVFNY LLC, Plaintiff was

[15] *See* Gregory Tr., Ex. B, 38:18-19.
[16] *See* Stmt. Material Fact at ¶19.
[17] *See* Stmt. Material Fact at ¶25.
[18] *See* Gregory Tr., Ex. B, 51:17-22.

able to reobtain its business.[19] Accordingly, Plaintiff cannot prevail on its breach of contract claim as it was able to reestablish its business with PVFNY LLC, and any change in business with Liberty Jet was related to Plaintiff's poor performance, and the change with Pitch Link is related to the location of Pitch Link's planes, not Meneses' current position.

### E. MENESES HAS NOT SOLICITED ANY OF PLAINTIFF'S EMPLOYEES TO TERMINATE THEIR EMPLOYMENT WITH PLAINTIFF.

While in the Complaint, Plaintiff alleged that Meneses' actions led to a "depletion of [Plaintiff's] workforce,"[20] such sentiments are nothing more than hyperbole as when questioned at depositions, Plaintiff's corporate representative acknowledged that the only employee "lost" was Diego Herrera[21] who resigned from Plaintiff in January 2025, over four months after Defendant's employment with Plaintiff was terminated. Moreover, Meneses has not solicited Mr. Herrera. Mr. Herrera is not employed by Liberty Jet, and the communications between Meneses and Mr. Herrera show nothing more than a friendship. There is simply no evidence, outside of Plaintiff's own conjecture, that would connect Mr. Herrara's voluntary resignation to Meneses. This unsubstantiated claim is simply provided to trump up Plaintiff's claims and must be disregarded.

## III. PLAINTIFF CANNOT PREVAIL ON ITS CLAIM FOR UNJUST ENRICHMENT.

Plaintiff's second cause of action for unjust enrichment, which is plead in the alternative, also fails as a matter of law. "The Supreme Court of Virginia has generally adopted a three-part test to establish an unjust enrichment claim: '(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value.'" *LCF Grp., Inc. v. Piedmont Power Sports, Inc.*, 688 F. Supp. 3d 323, 330 (W.D. Va. 2023).

---

[19] *See* Gregory Tr., Ex. B, 53:6-11.
[20] *See* Complaint [Doc. No. 1] at ¶64.
[21] *See* Gregory Tr., Ex. B, 13-17.

*A. The Unjust Enrichment Claim Fails Because The Parties Have a Contract Concerning this Subject Matter.*

Plaintiff's unjust enrichment claim fails as a matter of law because there is a contract between the parties concerning Plaintiff's purported confidential information. Particularly, paragraph 1 of the Agreement,[22] entitled "Confidential Information," governs Meneses's use of any of Plaintiff's purported confidential information. As there is a contract that governs the use of Plaintiff's confidential information, Plaintiff cannot prevail on a claim of unjust enrichment, which seeks repayment for Meneses' purported misuse of its confidential information. *See Cortez-Melton v. Cap. One Fin. Corp.*, 2021 WL 771754, at *11 (E.D. Va. Feb. 26, 2021) ("As other courts in the Eastern District of Virginia have stated, '[a] condition precedent to the assertion of ... a claim [of unjust enrichment] is that no express contract exists between the parties.'"), citing *Butts v. Weltman, Weinberg & Reis Co., LPA*, 2013 WL 6039040, at *3 (E.D. Va. Nov. 14, 2013)(collecting cases). Here, as the Agreement explicitly provides for the use of Plaintiff's confidential information, Plaintiff may not seek recovery for unjust enrichment. Accordingly, Plaintiff's second cause of action, even if plead in the alternative, must be dismissed.

*B. Plaintiff Cannot Prevail On the Unjust Enrichment Claim Because Meneses Has Not Derived a Benefit from Plaintiff's Purported Confidential Information.*

Even assuming, *arguendo*, that Plaintiff could proceed on its unjust enrichment claim, which Meneses does not concede, Plaintiff's claim for unjust enrichment fails because Plaintiff fails to demonstrate that Meneses has benefited from this purported information. Plaintiff alleges that it conferred a benefit on Meneses by providing "confidential information," which it broadly defines as "lists of employees, client information, details of operations and/or other unique services." However, what Plaintiff has not and cannot demonstrate how Meneses has been unjustly

[22] [Doc. No. 1-2].

enriched by this information. Particularly, Meneses, contrary to Plaintiff's allegations is not receiving monetary remunerations from any of this information – even if this information did have any independent value (which it does not). The record demonstrates that Meneses received a role as a cleaner working for one of Plaintiff's a la carte customers, Liberty Jet.[23] Notably, as a customer of Plaintiff, Liberty Jet was already knowledgeable about Plaintiff's pricing information, and, therefore, Meneses has not gained any benefit from having any information about Plaintiff's pricing. With respect to the type of work conducted by Meneses – cleaning and detailing aircraft, offices and lavatories,[24] it is not of work that is so unique or specialized that Meneses has gained any specialized benefit by doing the same type of cleaning work for Liberty Jet. As to Plaintiff's employees, again, Plaintiff has not and cannot demonstrate that Meneses has either solicited or caused either the termination or hire of any of Plaintiff's former employees to Liberty Jet. The only employee at issue, Diego Herrara, is not employed by Liberty Jet and resigned from Plaintiff approximately 5 months after Meneses's termination.[25] Accordingly, even if Plaintiff could proceed with its unjust enrichment claim, this claim fails because Plaintiff has not and cannot demonstrate that Meneses has gained any independent value from this purportedly confidential information.

## CONCLUSION

Plaintiff's claims for: (a) breach of contract, and (b) unjust enrichment, fail as a matter of law. Particularly, the restrictive covenants that Plaintiff seeks to enforce are excessively broad and unenforceable under Virginia State Law. Additionally, Meneses' employment at Liberty Jet is not a violation of the Agreement (even if it was enforceable). Further, the damages Plaintiff

[23] *See* Stipulated Fact at ¶10.
[24] *See* Stipulated Fact at ¶11.
[25] *See* Stipulated Fact at ¶14.

purportedly suffered, the loss of Liberty Jet as a client, is not causally related to Meneses's employment but rather deficiencies in Plaintiff's provision of services to Liberty Jet. Pitch Link is not using Plaintiff's services because its aircraft is located in Florida. Additionally, PVFNY LLC resumed using Plaintiff's services in February 2025. Plaintiff's claims for unjust enrichment fails because the use of the confidential information underlying this claim is governed by paragraph 1 of the Agreement, thus, Plaintiff cannot seek the equitable remedy of unjust enrichment. Additionally, even if Plaintiff could proceed, Plaintiff fails to demonstrate how Meneses has been unjustly enriched by this information. Accordingly, Plaintiff's claims for breach of contract and unjust enrichment fail as a matter of law and should be dismissed, in their entirety, and judgment entered in favor of Plaintiff.

Dated: October 20, 2025
Uniondale, New York

McNAMEE HOSEA, P.A.

/s/ Justin P. Fasano
Justin P. Fasano (VSB # 75983)
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jfasano@mhlawyers.com
Attorneys for Defendant

and

FORCHELLI DEEGAN TERRANA LLP

By:___/s/__Lisa Casa______________________

Gregory S. Lisi, Esq. (admitted pro hac vice)
Lisa M. Casa, Esq. (admitted pro hac vice)
*Attorneys for Defendant*
The OMNI
333 Earle Ovington Blvd., Suite 1010
Uniondale, NY 11553
Phone: (516) 248-1700
Fax: (516) 248-1729
glisi@forchellilaw.com
lcasa@forchellilaw.com
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2025, a true copy of the foregoing, Defendant's Motion for Summary Judgment was served by ECF transmission upon all registered ECF users.