IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHARP DETAILS, LLC, *d/b/a Prime Appearance*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 1:25-cv-00276 (AJT/LRV) |
| GABRIEL MENESES, | ) ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

In this diversity action,[1] Plaintiff Sharp Details, LLC d/b/a Prime Appearance ("Plaintiff" or "Sharp") brings claims against Defendant Gabriel Meneses ("Meneses"), its former employee, for breach of a non-compete and non-solicitation agreement (Count I) and for unjust enrichment (Count II). On October 20, 2025, Meneses filed a Motion for Summary Judgment [Doc. No. 48], (the "Motion") and the Court held a hearing on the Motion on November 12, following which it took the Motion under advisement. Upon consideration of the Motion, the memoranda in support thereof and in opposition thereto [Doc. Nos. 52, 57], the arguments of counsel at the hearing, and for the reasons stated herein, the Motion is GRANTED.

## I. BACKGROUND

The following facts are undisputed unless indicated otherwise:

Plaintiff provides aircraft detailing, janitorial, and commissary services to aviation clients at airports nationwide (detailing includes including exterior touch-ups, paint protection, leather protection, as well as interior cleaning and restoration services,). [Mot.] at 7; [Doc. No. 48-2] at

---

[1] Plaintiff filed this action on February 13, 2025; Defendant filed its Answer on April 18, 2025 [Doc. No. 10] and the Motion for Summary Judgment on October 20, 2025. [Doc. No. 48]. Briefing on the Motion concluded on November 10, 2025. [Doc. Nos. 52, 57]. The parties filed their respective opposition and reply briefs by November 10.

1

4. Defendant Meneses began his employment with Plaintiff on September 8, 2023, when Plaintiff acquired his previous employer where he had worked since 2007. *Id.* ¶¶ 14-15. Shortly after that change in ownership and as a condition of his continued employment with Plaintiff, Meneses signed a "Confidentiality and Noncompete Agreement" (the "Agreement"), which contained, *inter alia*, restrictions on his ability to solicit Plaintiff's clients or employees or provide competing services during and for one year after his employment, as detailed below. [Doc. No. 1-2] ¶¶ 16-21. Meneses was employed as a manager, but he spent somewhere between 50 and 70 percent of his time cleaning and detailing aircraft.[2] His managerial responsibilities, though also disputed as to their precise scope, included communicating with clients and supervising approximately five other employees. [Doc. No. 48-1] at 7, 13. He worked primarily at two airports in the Long Island area: Republic Airport in Farmingdale, NY ("FRG"), and MacArthur Airport in Ronkonkoma, NY ("ISP"). *Id*. at 8. In August 2024, Plaintiff discovered that Meneses had provided services outside of his employment to two of its clients in violation of the Agreement and was terminated. *Id.* He subsequently admitted that breach of the Agreement and compensated Plaintiff for his violation in an agreed-upon amount. *Id*. On or around September 11, 2024, Liberty Jet, a former client of Plaintiff, decided to take "in house" the services for which it had historically patronized Sharp and that same day hired Meneses as a "cleaner" in connection with that decision.[3] [Mot.] at 8

With respect to its breach of contract claim, (Count I), Sharp alleges that after his termination, Meneses continued to violate the Agreement by continuing to solicit both its

---

[2] The parties dispute several aspects of Meneses' role, including whether he was responsible for soliciting business and how much time he spent personally detailing aircraft. *See* [Mot.] at 9; [Doc. No. 48-2] at 9; [Doc. No. 52-1] ¶ 4; [Doc. No. 52-2] ¶ 7.
[3] Meneses does not have a job title but both he and Liberty Jet describe his responsibilities consistently with that informal title. *Id*. at 8–9; [Doc. No. 52-6] at 3.

2

customers and its employees either through his competing business or as an employee of Liberty Jet. [Compl.] ¶¶ 73-79. More specifically, Plaintiff contends that Meneses violated the Agreement by (1) servicing one of its clients, Superior Jet, before being employed by Liberty Jet; (2) soliciting Liberty Jet to terminate its relationship with Plaintiff, (2) soliciting as an employee of Liberty Jet Plaintiff's other clients after becoming employed by Liberty Jet, and (3) recruiting one of its then-employees to work with him at Liberty Jet. Plaintiff alleges that Meneses' contract breaches caused it to loose approximately $230,000 [Compl.] ¶¶ 58, 63; [Doc. No. 52-8] at 4. With respect to its unjust enrichment claim (Count II), Plaintiff alleges that Meneses knowingly and unjustly benefitted from his training, from the customer relationships Plaintiff developed; and from his access to the company's customer relationships and confidential information–chiefly pricing, employee and customer lists, and techniques and materials for cleaning aircraft. [Opp.] at 24–26; *see also* [Compl.] ¶¶ 83-90.

  Meneses, for his part, contends that the Agreement is unenforceably overbroad and that he did not solicit any of Plaintiff's clients or employees, either before or after he was employed by Liberty Jet. Rather, he contends that after he was terminated by Sharp, he merely obtained new employment as a cleaner at Liberty Jet, which operates in one or more of the airports he previously worked at, and that he serviced all of the aircraft in question in this capacity. [Mot.] at 25. He also contends that he did not solicit Liberty Jet to end its relationship with Liberty Jet and that its decision to terminate its relationship with Plaintiff resulted from Liberty Jet's dissatisfaction with Plaintiff's services after Meneses was terminated. [Mot.] at 11, 22; [Doc. No. 48-1] at 21. As for the unjust enrichment claim, Meneses claims that there is nothing about what he does at Liberty Jet that involves any of Plaintiff's protectible information

3

Defendant has moved for summary judgment on the grounds that the Agreement is unenforceably overbroad, and in any event, there is an absence of admissible evidence sufficient for a reasonable fact finder to find that he engaged in any conduct prohibited by the Agreement or that he engaged in any conduct that would support a claim for unjust enrichment. Plaintiff contends that genuine issues of material fact preclude summary judgment in Meneses' favor on either claim.

## II. LEGAL STANDARD

The standard for granting summary judgment is satisfied if, after a review of the record, the Court finds that there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). There are no material facts in dispute "unless there is sufficient evidence favoring the nonmoving party." *Anderson*, 477 U.S. at 249. Sufficiency of the nonmoving party's evidence is evaluated by whether a reasonable juror could find in their favor by a preponderance of the evidence; thus, "the mere existence of a scintilla of evidence in support of the [party's] position will be insufficient." *Id*. at 252. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). And while the Court must resolve conflicting inferences from circumstantial evidence in favor of the nonmoving party, the review standard does not allow for the "distort[ion] of the plain meaning of words or [to] conveniently to read them out of context." *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 821–22 (4th Cir. 1995).

## III.  DISCUSSION

A. **The relied upon provisions of the Agreement are not unenforceably overbroad.**

Meneses initially claims that he is effectively a "glorified janitor," and that the Agreement is unenforceable as a matter of law because it unreasonably constrains his ability to earn a living. Plaintiff contends that those provisions of the Agreement it seeks to enforce are enforceable since they are narrowly tailored to protect key business interests to which Meneses was exposed, including their client relationships, pricing information, and its techniques and "proprietary blends" of cleaning materials. [Opp.] at 13–14, 25.

Plaintiff alleges a violation of the following provisions of the Agreement, which provides that for a period of one year after his termination, an employee would not:

   a. Contact any Client of the Company[4] for the purpose or requesting, inducing or attempting to induce such Client to cancel, breach or fail to renew any agreement for services with the Company (section 3(a) of the Agreement);
   b. Contact any Client of the Company for the purpose of requesting, inducing or attempting to induce such Client to terminate any business relationship with the Company or to seek additional or new services similar to those provided by the Company from any source other than the Company (section 3(b));
   c. Compete with the Company on behalf of him or herself or an entity founded by him or her in any city or country in the United States of America in which Employee made sales or obtained clients on behalf of the Company, solicited sales or business on behalf of the Company, or provided services to clients of the Company, within the one year period prior to Employees termination from employment (section 3(d));
   d. Compete with the Company as an employee of a person or entity engaged in any business similar to the type of business conducted by

---

[4] Under the terms of the agreement, a "Client" is defined as a client of Plaintiff whose business was solicited, received, or renewed by Meneses; or a client or prospective client who was actively solicited by Plaintiff and where Meneses had knowledge as to the client or the solicitation effort. Unless otherwise noted, all future references to a client or former client of Plaintiff will likewise refer to this definition. [Doc. No. 1-2] at 6. The phrase "The Company" in the Agreement refers to Plaintiff.

      the Company by soliciting or assisting in the solicitation of such business in any city or county in the United States of America in which Employee made sales or obtained clients on behalf of the Company, solicited sales or business on behalf of the Company, or provided services to clients of the Company, within the one year period prior to Employee's termination from employment (section 3(e));

  e.  Induce or attempt to induce any of the Company's Employees to terminate their employment with the Company or to provide the same type of services performed for the Company for any other person or entity (section 3(f)). [5]

[Doc. No. 1-2] at 4–5.

Under Virginia law, covenants not to compete are disfavored as restraints on trade and are strictly construed, with any ambiguities construed in favor of the employee. *Mod. Env'ts, Inc. v. Stinnett*, 263 Va. 491, 493, (2002). The validity of an employer-employee non-competition agreement is determined using a three-part test which the employer has the burden to meet. *Motion Control Sys., Inc. v. East*, 262 Va. 33, 37 (2001). In that regard, the employer must show that the restraint is (1) no greater than necessary to protect a legitimate business interest, (2) is not unduly harsh or oppressive in curtailing an employee's ability to earn a livelihood, and (3) is reasonable in light of sound public policy. *Stinnett*, 263 Va. at 493-94. In analyzing these "three

---

[5] Plaintiff does not allege a violation of section 3(c), which expansively and vaguely provides that an employee shall not "[c]ause, encourage or in any way assist any third person or entity to offer or provide any service of the type provided by the Company to any Client of the Company." *See* [Compl] ¶¶ 75-79. That provision raises a substantial question as to its enforceability, as it arguably prohibits Meneses from working for a competitor in any capacity that might allow, "encourage" or "assist in any way" a competitor in offering competitive services, even a job totally unrelated to any of the prohibited services. *See Home Paramount Pest Control Companies, Inc. v. Shaffer*, 282 Va. 412, 416 (2011), It also appears inconsistent with Plaintiff's concession that the Agreement allows Meneses to work for a competitor, so long as he does not also solicit Sharp's clients. *See* [Opp.] at 13. Nevertheless, the Court has no need to rule on the enforceability of that provision since even if unenforceable, its tainting effect on the rest of the Agreement can be eliminated by severing that provision pursuant to the Agreement's severability provision. ([Doc. No. 1-2] at 8). *See GMS Indus. Supply, Inc. v. G & S Supply, LLC*, 441 F. Supp. 3d 221, 227–28 (E.D. Va. 2020) (Under Virginia law, courts sever unenforceable provisions if the contract contains an enforceable severability clause).

interrelated factors" courts applying Virginia law consider "the restriction in terms of function, geographic scope, and duration." *Simmons v. Miller*, 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001).

Here, Sharp's purported business interests are its client relationships and confidential information, which includes pricing and certain cleaning techniques blends of cleaning materials. [Opp.] at 6, 12. Virginia courts have found that customer relationships and pricing are valid protectible interests for such agreements. *Hair Club for Men, LLC v. Lailuma Ehson and Illusion Day Spa, LLC*, No. 1:16-CV-236, 2016 WL 4577019, at *3 (E.D. Va. Aug. 31, 2016) ("Hair Club") (customer relationships); *Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 824 (E.D. Va. 2011) (pricing). Furthermore, restrictive covenants, especially those barring competition and solicitation only as to clients Meneses personally worked with during the last year of his employment (*supra*, note 4) is narrowly tailored to protect these interests. *Hair Club*, 2016 WL 4577019 at *5 ("Virginia state courts, and this Court, heavily consider whether 'the former employee had direct customer contact.'") (*quoting Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 210 (Fairfax 2009)).

The Agreement's impact on Meneses' ability to earn a livelihood is the most relevant consideration as to its enforceability. In that regard, the Agreement's one year duration is well within the duration typically found reasonable; and Meneses does not expressly argue that the agreement was unreasonable in its duration. *See, e.g. Daston Corp. v. MiCore Solutions, Inc.*, 80 Va. Cir. 611, 2010 WL 7375597 (2010) (finding two-year non-compete reasonable). Likewise passing muster is the Agreement's geographic scope, making the Agreement applicable within "any city or county" in which Meneses actually worked for Plaintiff. While Plaintiff operates nationwide and Meneses could have been assigned to work anywhere Plaintiff operated, it

appears from the record that that Meneses, in fact, spent at least 90% of his time at FRG and does not appear to have worked at airports beyond FRG and ISP. [Doc. No. 48-1] at 9. Those two airports are located in Nassau and Suffolk counties, which respectively comprise the western and eastern halves of Long Island but do not extend into New York City. Defendant resides in Valley Stream, NY, less than 20 miles from Manhattan. [Compl.] ¶ 3. Given Defendant's proximity to New York City and that neither of the airports Defendant worked at were located in a major city both weigh against a finding that the geographic scope of the non-compete unreasonably restricts his ability to make a living.

With respect to the functional scope of the restrictions on his ability to earn a living, [6] 3(e) prohibits him only from working for a competitor *by soliciting a client he personally serviced during his employment* and states specifically that Meneses may not:

> "Compete with [Sharp] as an employee of a person or entity engaged in any business similar to the type of business conducted by [Sharp] **by soliciting or assisting in the solicitation** of such business in any city or county in the United States of America in which Employee made sales or obtained clients on behalf of [Sharp], solicited sales or business on behalf of [Sharp], or provided services to clients of [Sharp], within the one year period prior to Employee's termination from employment."

[Doc. No. 1-2] at 5 (emphasis added).

In the seminal Virginia case on reasonableness of the functional scope, *Home Paramount Pest Control Companies, Inc. v. Shaffer*, 282 Va. 412, 416 (2011), the Supreme Court of Virginia considered and struck down as overbroad a restriction that prohibited former pest control employees from working for any other pest control company in any capacity.[7] In doing so, the

---

[6] This restriction presumably relates to his current role as a Cleaner for Liberty Jet, though the parties also stipulate that Meneses co-owns a business that appears aviation-related.
[7] Specifically, the provision barred the employee from "engag[ing] indirectly or concern[ing] himself ... in any manner whatsoever" in pest control "as an owner, agent, servant, representative, or employee, and/or as a member of a

8

Court stated that "[w]e have consistently assessed the function element of provisions that restrict competition by determining whether the prohibited activity is of the same type as that actually engaged in by the former employer." *Id*. Here, section 3(e) does not impose the scope of restrictions struck down in *Shaffer*; rather this section imposes restrictions tied directly to "activity…of the same type as that actually engaged in by the former employee," *viz.*, the solicitation of clients in the geographic areas where he worked. [Doc. No. 1-2] at 4.

Meneses also contends that the Agreement is unenforceable based on "sound public policy" and Va. Code, § 40.1-28.7:8. Va. Code, § 40.1-28.7:8 bars non-compete agreements for "low-wage employees," that is, hourly employees or those who earn less than the average weekly wage in the Commonwealth. [Mot.] at 18. However, Meneses has not proffered evidence sufficient to establish that he meets either of these definitions of a low-wage employee, instead arguing that he should have been classified as non-exempt because his duties were weighted toward airplane cleaning rather than managerial duties. *Id*. at 18-20. Plaintiff, on the other hand, has presented evidence that in his final year of employment Meneses earned a salary of $115,960 – compensation well over the median wage. [Opp.] at 21 n. 3. Based on the record, the Agreement is not unenforceable under either Va. Code, § 40.1-28.7:8 or as a matter of sound public policy.

In sum, when considered based on the totality of the circumstances, as required, those provisions of the Agreement that Plaintiff seeks to enforce are not unreasonable as a matter of law and are enforceable.[8]

### ii) Whether Meneses Breached the Agreement

---

partnership and/or as an officer, director or stockholder of any corporation, or in any manner whatsoever." *Shaffer*, 282 Va. at 416.

[8] The reasonableness of the Agreement's restrictions is also reflected in Meneses' willingness to admit to and pay compensation for the violation of the Agreement that resulted in his termination by Plaintiff.

Plaintiff alleges that Meneses violated the following five restrictions set forth in Section 3 Agreement in that he:

(1) solicited its clients to terminate agreements for services with Sharp (section 3(a)) ([Compl.] ¶ 75);

(2) solicited its clients to terminate their business relationship with Sharp or to seek additional or new services similar to those provided by Sharp from Meneses' competitive business (section 3(b)) ([Compl.] ¶ 76);

(3) unfairly competed with Sharp on behalf of his competitive business within the same market area (section 3(d)) ([Compl.] ¶ 77);

(4) unfairly competed by soliciting former clients within the same market area (section 3(e)) ([Compl.] ¶ 78); and

(5) solicited or attempted to solicit their employees to quit or work for his competing business (section 3(f)) ([Compl.] ¶ 79).

The alleged violation of these provisions must be considered in light of Sharp's concession that under the Agreement "…Meneses could '[c]ompete with the [Plaintiff] as an employee of a person or entity engaged in any business similar to the type business elected by the [Plaintiff]' –i.e. work for a competitor - provided he did not *also* solicit [Plaintiff's] clients." [Opp.] at 13. Accordingly, central to Sharp's claims under Sections 3(a), (b), (d) and (f) is whether Meneses "solicited" clients.[9] On that issue, Sharp contends that issues of fact preclude summary judgment in Meneses' favor.

---

[9] Meneses contends that Section 3(a) does not apply to at least some of the clients at issue in this case because all of them were "a-la-carte clients" of Sharp, meaning they did not have a contract for recurring service. [Mot.] at 21. Plaintiff contends that cancelling even an "a-la-carte" client's scheduled service appointment constitutes a "cancel[ation], breach or fail[ure] to renew any agreement for services." [Doc. No. 1-2] at 4. Given the absence of evidence concerning the alleged solicitation of any of Sharp's client of any description, there is no need to rule on this issue.

In support of Plaintiff's contention that Meneses solicited its client Liberty Jet to terminate its relationship with Plaintiff, the only evidence Plaintiff offers is the deposition testimony of Liberty Jet's president Daniel Leon, [Doc. No. 52-6], who testified that he approved hiring Meneses at the recommendation of his employee Steve Mott, who was "very dissatisfied …with the work that they [Plaintiff] was doing , or not doing…." [10] *Id.* at 1, lls 13-15. In response to the question "Do you know who initiated contact in regards to Mr. Meneses being hired by Liberty Jet," Leon testified "No. I was told he was looking for a job. I don't know—we didn't contact him. I'm sure of that." *Id*. at 2, lls 12-16.

Although Leon clearly had no personal knowledge concerning who initiated contact with Liberty Jet, and limited recollection overall concerning Meneses' hiring, when construed most favorably to Plaintiff, this evidence is sufficient to establish that Meneses initiated contact with Liberty Jet for the purpose of finding a job after he was fired by Plaintiff, but insufficient to establish that he did anything more than look for a job after being terminated by Sharp. Any statement by Meneses that he is looking for a job does not, in and of itself, constitute a violation of the Agreement, particularly since the record reflects that Liberty Jet's dissatisfaction with Plaintiff appears to have predated any employment discussions with Meneses and in any event was unrelated to any evidence of a "solicitation" or contact by Meneses, an assessment consistent with Plaintiff's own assessment of the evidence; *see* [Opp.] at 21; where Plaintiff states with respect to Liberty Jet's decision to terminate its relationship that "the logical conclusion [with respect to Liberty Jet's decision to terminate its relationship with Plaintiff] is that once Meneses was unemployed, Liberty Jet elected to hire someone to do [Plaintiff's] work

---

[10] Leon further testified that he "was told that [Meneses] was terminated [by Plaintiff], looking for a job. And I said, you can hire him." [Doc. No. 52-6] at 1 lls 4-; and that "They presented me with a problem [concerning the cleaning of its planes]. They presented me with a—a solution. And I said fine." And that was pretty much the extent of it." [Doc. 52-6] at 1. he

11

in-house, rather than pay for the services through the [Plaintiff]." Without more, that evidence is insufficient as a matter of law to support a claim that Meneses solicited Liberty Jet to terminate its relationship with Plaintiff.

Likewise absent from the record is sufficient admissible evidence to support Plaintiff's claim that Meneses "solicited" its clients other than Liberty Jet. In that regard, Sharp merely points to evidence that Meneses *serviced* aircraft belonging to those clients, all but one after he was employed by Liberty Jet. [Opp.] at 7–9.[11]

With respect to that one exception, Sharp argues that there is a genuine issue of fact as to whether Meneses violated the restriction in section 3(d) when he competed with it directly through his own competitive business by working on a plane owned by Superior Jet, a Plaintiff client, before he was employed by Liberty Jet. [Opp.] at 9, 23. Meneses in his deposition denied any familiarity with Superior Jet; and the only evidence offered in support of that claim is the deposition testimony of Plaintiff's Senior Vice President of Operations Jason Gregory, who testified that "we" observed Meneses working on a single plane belonging to its former customer Superior Jet on or around September 7, 2024. [Doc. No. 52-4] at 12–13. But Gregory did not testify that he personally observed Meneses, and given his role and where an officer of his rank was officed,[12] his testimony does not establish personal knowledge, but rather information

---

[11] In support of its solicitation claim, Plaintiff also points to Meneses' interaction with its client Pitch Link. But Plaintiff concedes that Pitch Link initiated contact with Meneses after his termination, contending instead that Meneses' responding to that outreach constitutes solicitation in breach of the Agreement. [Opp.] at 23. Given that non-compete agreements are to be strictly construed, particularly when prepared by the employer without any opportunity for negotiations on the part of the employee, and how courts have typically viewed what constituted "solicitation," this proffered "evidence" of solicitation does not constitute evidence sufficient to create a triable issue of fact.on Sharp's solicitation claim based on Pitch Link. *See Summer Wealth Mgmt., L.L.C. v. Inv. Placement Grp.,* No. 1:15CV1660 (JCC/JFA), 2016 WL 153087, at *2 (E.D. Va. Jan. 12, 2016) ("The plain meaning of the word 'solicit' requires the initiation of contact.") (quoting *Mona Elec. Group, Inc. v. Truland Service Corp.*, 56 Fed.Appx. 108, 110 (4th Cir. 2003)). Similarly, Plaintiff points to other planes belonging to its former clients that Meneses serviced. *See* [Doc. Nos. 52-1, 52-2, 52-4],but there is no evidence that Meneses worked on any planes after his employment with Liberty Jet outside of his employment with Liberty Jet.

[12] *See* [Doc. No. 48-2] at 2 ("The corporate headquarters is in Sugar Land, Texas. We do have an office at Farmingdale airport, which the highest position there is a manager. Then, we have more senior regional leadership in New Jersey.")

conveyed to him by some unidentified Sharp employee. In sum, there is a lack of demonstrated personal knowledge by Gregory, as required, *see* Fed. R. Civ. P. 56(c)(4), and the statement is accordingly inadmissible hearsay which cannot be considered on a motion for Summary Judgment.[13] *See Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991).

Finally, Plaintiff alleges that Meneses violated Section 3(f) by recruiting its employee, Diego Herrera, who left Sharp on January 27, 2025. [Doc. No. 52-9]. The only evidence in the record directly from Herrera or Meneses pertaining to any conversation between them is Meneses' denial that he solicited Herrera; *see* [Doc. No. 48-1] at 23; and Plaintiff offers only a declaration by one of its employees, Reyna Gavarette, who states that Herrera told her that Meneses instructed Herrera to recruit other employees on his behalf. [Doc. No. 52-9]. But Gavarette's statement is inadmissible hearsay and does not provide the required admissible evidence to support a claim.[14] *See Maryland Highways Contractors Ass'n, Inc.*, 933 F.2d at 1251.

### iii) Plaintiff's Unjust Enrichment Claim

Plaintiff has also brought an unjust enrichment claim. A claim for unjust enrichment is an implied contract action based on the principles of equity, and such a claim may not proceed if the facts giving rise to that claim are governed by an express contract between the parties. *See Butts v. Weltman, Weinberg & Reis Co., LPA*, No. 1:13-cv-1026, 2013 WL 6039040, at *3 (E.D. Va.

---

[13] Gregory also testified that the alleged servicing of the Superior Jet plane was a "one-off" job and Plaintiff's business with Superior Jet has been generally unaffected, *see* [Doc. No. 52-4] at 12. There is no evidence concerning any of the circumstances surrounding the September 2024 sighting of Meneses, or the servicing of that alleged aircraft, including at which particular airport that alleged servicing took place), all further undercutting any evidentiary support for its claim that Meneses was "competing" with Plaintiff or that his conduct constituted a material breach of the Agreement.

[14] There is also no evidence that Herrera worked with Liberty Jet (or with Meneses directly) after his resignation, nor that any person other than Herrera left Plaintiff to work with either Liberty Jet or Meneses. [Mot.] at 12; *see also* [Doc. No. 48-1] at 23.

13

existence of an implied contract of a different nature containing the same subject matter" (*quoting S. Biscuit Co., Inc. v. Lloyd*, 174 Va. 299, 311 (1940)).

The basis for Sharp's unjust enrichment claim is Meneses' alleged use of Plaintiff's confidential information. [Doc. No. 1-2] at 1. The Agreement specifically addresses Meneses's use of confidential information; and ostensibly recognizing that its unjust enrichment claim is precluded by the scope of the Agreement, Sharp is asserting this claim "only in the alternative and if the Court for whatever reason decides that the [Agreement] is unenforceable." [Compl.] ¶ 84. Given the Court's ruling as to the enforceability of the Agreement, there is no need to consider this claim as moot.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff has failed to establish a genuine issue of material fact as to any of its claims; and based on the undisputed facts, Meneses is entitled to judgment as a matter of law on all claims, and accordingly, it hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 48] be, and the same hereby is, **GRANTED**, and this matter is hereby **DISMISSED**.

The Clerk is directed to forward copies of this order to all counsel of record and to enter judgment in favor of Defendant pursuant to Rule 58.

Alexandria, Virginia
December 15, 2025

/s/
Anthony J. Trenga
Senior United States District Judge
Senior U.S. District Judge